IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. **13-12135-E**

Pruco Life Insurance Company,

Plaintiff/Counter-Defendant/Appellee,

- versus -

Wells Fargo Bank, N.A., as Securities Intermediary,

Defendant/Counter-Claimant/Appellant

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

---

**INITIAL BRIEF OF
DEFENDANT/COUNTER-CLAIMANT/APPELLANT
WELLS FARGO BANK, N.A.,
AS SECURITIES INTERMEDIARY**

---

SHUBIN & BASS, P.A.
John K. Shubin
Juan J. Farach
46 S.W. 1st Street
Third Floor
Miami, Florida  33130
Telephone: (305) 381-6060
Facsimile:  (305) 381-9457

WHITE & CASE LLP
Raoul G. Cantero
Maria J. Beguiristain
200 South Biscayne Boulevard
Suite 4900
Miami, Florida  33131
Telephone: (305) 371-2700
Facsimile:  (305) 358-5744

*Co-Counsel for Defendant/Counter-Claimant/Appellant
Wells Fargo Bank, N.A., as Securities Intermediary*

MIAMI 980220

## CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel for Wells Fargo Bank, N.A., as Securities Intermediary and pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, certifies that the following is a complete list of persons and entities having an interest in the outcome of this appeal:

AIUH LLC

AIG Property Casualty

American International Group, Inc. (AIG)

Baker, Stephen C.

Beguiristain, Maria J.

Brasner, Steven M.

Cantero, Raoul G.

Chartis Inc.

Chartis U.S., Inc.

Cohn, James I., United States District Judge

Coker & Feiner

Davis, Michael S.

Drinker Biddle & Reath LLP

Farach, Juan J.

Feiner, Rod A.

Furman, Wendy L.

Graphite Management LLC

Horsburgh, Lawrence G.

Infinity Financial Group, LLC

Lavastone Capital LLC

Pett Furman, PL

Pett, Kristina B.

Pruco Life Insurance Company

The Prudential Insurance Company of America

Quartz Holdings LLC

Rafalko, Michael D.

Serfass, Stephen A.

Shubin & Bass, P.A.

Shubin, John K.

Tarshis, Mark A.

Tully, Nolan B.

WFC Holdings Corporation

Wells Fargo & Company (WFC)

Wells Fargo Bank, N.A., as Securities Intermediary

White & Case LLP

Zeichner Ellman & Krause LLP

/s/ Raoul G. Cantero
Raoul G. Cantero

## CORPORATE DISCLOSURE STATEMENT

Wells Fargo Bank, N.A., as Securities Intermediary and pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, provides its nongovernmental corporate party disclosure by stating that at least 10% of Wells Fargo Bank, N.A. is owned by WFC Holdings Corporation and Wells Fargo & Company, the latter of which is publicly traded under the symbol WFC.

/s/ Raoul G. Cantero
Raoul G. Cantero

C-3 of 3

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellant, Wells Fargo Bank, N.A., as Securities Intermediary, respectfully suggests that, because the district court created an exception to *Allstate Life Insurance Co. v. Miller*, 424 F.3d 1113 (11th Cir. 2005), the decisional process would be significantly aided by oral argument.

# <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS .......................................................C-1

CORPORATE DISCLOSURE STATEMENT .......................................................C-3

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CITATIONS ......................................................................................iv

STATEMENT OF JURISDICTION.......................................................................1

STATEMENT OF THE ISSUES.............................................................................2

STATEMENT OF THE CASE.................................................................................2

      1.     Course of Proceedings and Dispositions in the District Court .............3

      2.     Facts Relevant to the Appeal.............................................................8

      3.     Standard of Review .........................................................................11

SUMMARY OF THE ARGUMENT ....................................................................11

ARGUMENT .......................................................................................................13

I.     FLORIDA LAW AND THE POLICY PROHIBIT PRUCO FROM
      ASSERTING THE POLICY'S INVALIDITY BECAUSE THE
      TWO-YEAR INCONTESTABILITY PERIOD HAD LONG-SINCE
      EXPIRED ...................................................................................................13

II.    UNDER FLORIDA'S INSURABLE-INTEREST STATUTE, THE
      POLICY DID NOT LACK AN INSURABLE INTEREST AT ITS
      INCEPTION ...............................................................................................19

      A.     Mrs. Berger Had an Insurable Interest at the Policy's Inception,
           Which Is All that the Statute Requires ...............................................20

      B.     Under a Subjective Standard, Genuine Issues of Material Fact
           Remain About Mrs. Berger's Intent at the Policy's Inception............25

CONCLUSION .....................................................................................................27

CERTIFICATE OF COMPLIANCE ........................................................................28

CERTIFICATE OF SERVICE ...............................................................................29

*Pruco Life Ins. Co. v. Wells Fargo Bank, N.A., as Securities Intermediary*                    Case No. 13-12135-E

# <u>TABLE OF CITATIONS</u>

## CASES

\*    *Allstate Life Insurance Company v. Miller*,
     424 F.3d 1113 (11th Cir. 2005) .................................................................. passim

*American Gen. Life Ins. Co. v. Schoenthal Family, LLC*,
     555 F.3d 1331 (11th Cir. 2009) ........................................................... 19

*Bankers Sec. Life Ins. Soc. v. Kane*,
     885 F.2d 820 (11th Cir. 1989) ....................................................... 18, 19

*Cohen v. Kravit Estate Buyers, Inc.*,
     843 So. 2d 989 (Fla. Dist. Ct. App. 2003)........................................... 26

*Durr v. Shinseki*,
     638 F.3d 1342 (11th Cir. 2011) .......................................................... 11

*Equity Inv. Partners, LP v. Lenz*,
     594 F.3d 1338 (11th Cir. 2010) .......................................................... 25

*Great So. Life Ins. Co. v. Porcaro*,
     869 So. 2d 585 (Fla. Dist. Ct. App. 2004).......................................... 18

*In re Bankest Capital Corp.*,
     374 B.R. 333 (S.D. Fla. 2007) ........................................................... 25

*John Hancock Life Insurance Company v. Rubenstein*,
     No.09-21741-CIV-UNGARO (S.D. Fla. Aug. 31, 2009) .................................... 15

*Kaufman v. Mut. of Omaha Ins. Co.*,
     681 So. 2d 747 (Fla. Dist. Ct. App. 1996).......................................... 18

*Kramer v. Phoenix Life Ins. Co.*,
     940 N.E.2d 535 (N.Y. 2010)............................................................... 24

\*    *Lincoln Nat'l Life Ins. Co. v. Gordon R.A. Fishman Irrevocable Life Trust*,
     638 F. Supp. 2d 1170 (C.D. Cal. 2009) .......................................... 24, 25

*Pruco Life Ins. Co. v. Wells Fargo Bank, N.A., as Securities Intermediary*    Case No. 13-12135-E

*Prudential Ins. Co. of Am. v. Prescott*,
    176 So. 875 (Fla. 1937) ........................................................................ 14

*Prudential Ins. Co. of Am. v. Rhodriquez*,
    285 So. 2d 689 (Fla. Dist. Ct. App. 1973) ........................................... 18

*Sciaretta v. Lincoln National Life Insurance Company*,
    899 F. Supp. 2d 1318 (S.D. Fla. 2012) ................................................ 23

*Settlement Funding, LLC v. AXA Equitable Life Ins. Co.*,
    No. 06 CV 5743(HB), 2010 WL 3825735 (S.D.N.Y. Sept. 30, 2010) ............... 17

*State Farm Mut. Auto. Ins. Co. v. Weiss*,
    410 F. Supp. 2d 1146 (M.D. Fla. 2006) .......................................... 25, 26

*William Penn Life Ins. Co. of New York v. Sands*,
    912 F.2d 1359 (11th Cir. 1990) ........................................................... 25

## STATUTES AND OTHER AUTHORITY

28 U.S.C. § 1291 ....................................................................................... 1

28 U.S.C. § 1332(a) .................................................................................. 1

§ 627.404, Fla. Stat. (2008) ............................................................. passim

§ 627.404(1), Fla. Stat. (2008) ................................................... 12, 21, 22

§ 627.404(2)(b)(1), Fla. Stat. (2008) ...................................................... 21

§ 627.404(2)(b)(2), Fla. Stat. (2008) ...................................................... 22

§ 627.422, Fla. Stat. ........................................................................ 5, 12, 23

§ 627.455, Fla. Stat. (2010) ............................................................. passim

## OTHER AUTHORITIES

Federal Rule of Appellate Procedure 32(a)(7)(B) ..................................... 28

Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) ............................... 28

Federal Rule of Civil Procedure 56(a) ..................................................... 11

Federal Rule of Civil Procedure 59(e) ....................................................... 6

*Pruco Life Ins. Co. v. Wells Fargo Bank, N.A., as Securities Intermediary*                Case No. 13-12135-E

Federal Rule of Civil Procedure 60(b)...................................................................... 7, 8

Federal Rules of Appellate Procedure 32(a)(5) and (6)............................................. 28

## <u>STATEMENT OF JURISDICTION</u>

The district court had jurisdiction pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between the parties (D.E. 1, 73).

This Court has jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final decision of the district court.    The district court entered a second amended final judgment on April 11, 2013, adding that all claims before the Court have been adjudicated or resolved (D.E. 313).  On May 10, 2013, Appellant Wells Fargo Bank, N.A., as Securities Intermediary, timely filed its notice of appeal (D.E. 314).

## STATEMENT OF THE ISSUES

This is an appeal from a judgment declaring a $10 million life insurance policy void *ab initio* on the ground that it lacked an insurable interest at inception. Appellant Wells Fargo Bank, N.A., as Securities Intermediary, raises two issues on appeal:

(I) whether the two-year incontestability period under section 627.455, Florida Statutes (2010), bars Pruco Life Insurance Company's challenge to a life insurance policy's validity, raised over four years after the policy issued; and

(II) whether the district court applied the correct standard under Florida's insurable-interest statute in concluding that the policy is void *ab initio.*

## STATEMENT OF THE CASE

Pruco sought to invalidate a $10 million life insurance policy, for which it collected over $600,000 in premiums, years after the statutory two-year limit for such challenges had expired. The policy covered the life of Arlene Berger (not a party here or below), which, at the time Pruco issued it, named her husband as sole beneficiary ("Policy") (D.E. 201-2 at 8). Mr. Berger remained the sole ultimate beneficiary for more than two years after Pruco issued the Policy, when Mrs. Berger transferred it to her trust's premium finance lender to satisfy debts secured by the Policy (D.E. 187-27 at 4). Later that year, a licensed life settlement provider purchased the Policy from the lender and sold it to Wells Fargo's client

(D.E. 187-22).   Upon request and after this transfer, Pruco confirmed that Wells Fargo was the Policy's sole owner and beneficiary (D.E. 187-23).

Pruco's complaint characterized the Policy as a stranger-originated life-insurance ("STOLI") policy, obtained through fraudulent misrepresentations about Mrs. Berger's net worth, with the express goal of resale to third-parties on the secondary market (D.E. 1 at 2-3).   Pruco contends that, in Florida, such policies are illegal wagering contracts (D.E. 246 at 15).   Wells Fargo maintains that, because Mrs. Berger obtained the Policy on her own life and because, at the Policy's inception, her husband was the sole beneficiary, the Policy is not an illegal wagering contract and complies with Florida's insurable-interest statute (D.E. 186 at 9-15).   Wells Fargo also maintains that the Policy's incontestability clause bars Pruco's belated challenge, brought four years after the Policy issued (D.E. 30 at 6-10, 186 at 24-26).

## 1.    <u>Course of Proceedings and Dispositions in the District Court</u>

Pruco filed a complaint on July 9, 2010 against several defendants (D.E. 1). Only Count I named Wells Fargo (D.E. 1 at 14).   That count sought a declaration that the Policy was void *ab initio* for lack of an insurable interest (D.E. 1 at 14). Pruco also sought to retain the premiums paid on the Policy from its inception in May 2006 through June 2010 (D.E. 1 at 19).

Wells Fargo moved to dismiss, arguing that Pruco failed to state a claim on which relief could be granted because Florida's incontestability statute and the Policy's incontestability clause bar any challenge to a life insurance policy after the two-year incontestability period (D.E. 30 at 6-10).  The statute provides that every Florida insurance policy is "incontestable after it has been in force during the lifetime of the insured for a period of 2 years from its date of issue."  § 627.455, Fla. Stat. (2010).  Wells Fargo cited *Allstate Life Insurance Company v. Miller*, 424 F.3d 1113, 1115-17 (11th Cir. 2005), which holds that an incontestability clause bars a challenge to a life insurance policy after the incontestability period "for any other reason than the articulated exceptions in the statute" (D.E. 30 at 6).  Those exceptions are not at issue here.

The district court denied Wells Fargo's motion, distinguishing *Miller* by stating that the court there "equated the imposter defense with a fraud defense, thereby classifying it as a voidability claim rather than a void *ab initio* claim" (D.E. 64 at 12).  Finding that a "claim for lack of insurable interest . . . is different from a standard fraud or imposter-based claim in that a successful lack of insurable interest claim renders the insurance policy void *ab initio* rather than voidable," the district court held that *Miller* did not apply because Pruco claimed the Policy never existed (D.E. 64 at 12-13).  The district court relied, in part, on cases from other jurisdictions allowing insurers to challenge policies after the incontestability period

(D.E. 64 at 10-11).  The district court did not address *Miller*'s holding that section 627.455 operates as a statute of limitations.

Wells Fargo asserted several affirmative defenses (D.E. 73 at 15-16) and counterclaimed for negligent misrepresentation (D.E. 73 at 31).

Both parties moved for summary judgment.  Pruco argued, among other things, that the Policy lacked an insurable interest at inception and was void *ab initio* as a wagering contract (D.E. 177).  Wells Fargo argued, among other things, that (1) under Florida's insurable-interest statute, section 627.404, the Policy did not lack an insurable interest at inception; (2) under section 627.422, Florida Statutes, Mrs. Berger was free to assign the Policy at any time after inception; and (3) Pruco's claim is barred by the Policy's incontestability clause and section 627.455, Florida Statutes (D.E. 186).

Before the trial court ruled on either party's summary-judgment motion, Wells Fargo moved to compel production of a document Pruco had referred to as a "Special Investigation Unit Report re: Arlene Berger" (the "SIU Report"), which Pruco claimed was confidential (D.E. 242, 253-1).  Wells Fargo argued that the SIU Report was not prepared in anticipation of litigation, but in the ordinary course of business, and that Pruco had waived any privilege by voluntarily providing the document to the Florida Department of Financial Services (D.E. 242 at 6-9).  Wells Fargo had reason to believe that the document would support its affirmative

defenses of estoppel, waiver and *in pari delicto*, as well as its counterclaim for negligent misrepresentation, because it appeared likely to provide evidence about when Pruco first knew or should have known that its broker/agent Steven Brasner engaged in fraud relating to the Policy (D.E. 242 at 3).

The district court granted Pruco's motion for summary judgment, denied Wells Fargo's and entered final judgment (D.E. 246, 247).[1]  The court found that the Policy was void *ab initio* as an illegal wagering contract and that Florida law permits an insurer to retain premiums for a fraudulently procured policy (D.E. 246 at 20, 27).  The district court denied all pending motions, including the motion to compel the SIU report, as moot (D.E. 247).

Wells Fargo filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e), seeking the return of premium payments deposited in the court registry after Pruco filed the action (D.E. 248 at 2).  The court granted the motion and entered an amended final judgment (D.E. 255, 256).  Wells Fargo appealed the amended final judgment to this Court (D.E. 265).

Before appealing, however, Wells Fargo independently received a copy of the SIU Report—which was the subject of its motion to compel—from the Florida Department of Financial Services (D.E. 253-1 at 2).  Having obtained the evidence

---

[1] The order granting Pruco's motion for summary judgment did not analyze the incontestability issue, but instead incorporated the analysis in the order denying Wells Fargo's motion to dismiss (D.E. 246 at 27 n.6).

it sought since before the summary-judgment order, Wells Fargo filed a pre-appeal motion for relief from judgment under Federal Rule of Civil Procedure 60(b) (D.E. 253). But it was not until after Wells Fargo appealed that the district court granted the motion in part and denied it in part (D.E. 276). The district court granted the motion in ruling that "the information contained in the SIU Report raises a disputed issue of fact regarding which party is entitled to the premiums paid in 2009 and 2010," thus partially vacating its summary-judgment order (D.E. 276 at 9). But it refused to set aside its declaration that the Policy was a wagering contract and void *ab initio* (D.E. 276 at 9). It set trial on the issue of return of those premiums (D.E. 276 at 9).

Pruco then filed in this Court a motion to dismiss the appeal (August 17, 2012 motion in Case No. 12-10993). That motion argued, in part, that the post-appeal order granting partial relief under Rule 60(b) was entered without jurisdiction (motion at 9-11). This Court agreed and remanded the case to the district court so it could vacate the Rule 60(b) order and address the merits of the Rule 60(b) motion (D.E. 285). This Court added that, if the district court indicated that it would grant Wells Fargo's Rule 60(b) motion, the appeal would be dismissed (D.E. 285).

The district court vacated the Rule 60(b) order entered without jurisdiction (D.E. 286). It then issued another order, consistent with the prior order, granting in

part and denying in part Wells Fargo's Rule 60(b) motion (*compare* D.E. 276 *with* D.E. 287). This Court then dismissed the appeal in Case No. 12-10993 (D.E. 291).

The district court again set a trial on the limited issue of the return of premiums paid in 2009 and 2010 (D.E. 293). The parties settled those issues before trial (D.E. 311). Since all claims had either been adjudicated by the initial summary-judgment order or resolved by agreement, the parties requested a second amended final judgment to ensure entry of a final, appealable order (D.E. 312). The district court entered that judgment on April 11, 2013, noting that all claims had either been adjudicated or resolved (D.E. 313). Wells Fargo timely appealed on May 10, 2013 (D.E. 314).

## 2.     Facts Relevant to the Appeal

Because the district court granted summary judgment against Wells Fargo, we present the facts, and any inferences to be drawn from them, in the light most favorable to Wells Fargo. We present certain facts for context—even though they are ultimately not relevant to the issues on appeal—because the district court relied on them in granting summary judgment.

Interested in obtaining a life insurance policy, the Bergers approached their accountant, who referred them to Brasner (D.E. 201-2 at 3). Brasner was a Florida licensed insurance broker/agent for Pruco (D.E. 178 at 5). During the application process, Brasner provided false information about Mrs. Berger's net worth (D.E.

201-6 at 6-7). Also during the application process, LaSalle Bank, N.A., now known as Bank of America, N.A. ("LaSalle"), pre-approved the Policy for a non-recourse premium financing loan (D.E. 178 at 9). The loan arrangement included the creation of a trust that would own the Policy, the creation of a sub-trust that would apply for the loan, financing of premiums through LaSalle and program administration by Coventry Capital I LLC, which also would act as servicing agent for LaSalle (D.E. 178, 178-4).

Pruco issued the Policy on April 27, 2006 (D.E. 178 at 15). The Policy (and Pruco's files) named Mr. Berger as the sole beneficiary (D.E. 188 at 6). Although the receipt for the first premium payment showed that the payment came from Mrs. Berger, Coventry Capital had advanced the funds because the first premium was due before the documents for the premium financing loan were executed (D.E. 201-1 at 8). The advance became part of the total loan amount due to LaSalle (D.E. 201-1 at 8).

After Pruco issued the Policy, in June 2006, Mrs. Berger created The Arlene Berger 2006 Life Insurance Trust (the "Berger Trust") under a trust agreement naming Wilmington Trust Company as trustee and her husband as co-trustee and sole beneficial owner (D.E. 201-2 at 14). Under the trust documents, Mr. Berger was entitled to all the trust proceeds (D.E. 187-13 at 12). Mrs. Berger then requested that the owner and beneficiary of the Policy be changed to the Berger

Trust, and Pruco complied (D.E. 187-17 at 5). In July 2006, the Berger Trust, through the sub-trust, executed the premium financing Note and Security Agreement with LaSalle secured by the Policy (D.E. 178-4, 187-11, 187-15, 187-18). LaSalle issued two disbursements of loan proceeds under the loan agreement, one to Pruco for premiums and one to Mrs. Berger to reimburse Coventry Capital for the first premium payment (D.E. 178 at 15).

In September 2008—two-and-a-half years after Pruco issued the Policy— Mrs. Berger instructed the trustee of the Berger Trust, in writing, to relinquish the Policy to LaSalle in satisfaction of the premium finance loan (D.E. 187-27 at 4). In December 2008, a Coventry Capital representative identifying herself as "from Wilmington Trust Company" called Pruco and obtained information about, among other things, the Policy's cash-surrender value, beneficiary and incontestability (D.E. 178-27 at 1, 201-2 at 9). Later that month, Coventry First LLC, a licensed life settlement provider, purchased the Policy and sold it to Wells Fargo's client (D.E. 187-22). The total purchase price incorporated over $400,000 in premiums previously paid on the Policy (D.E. 246 at 11). As part of the sale, Coventry received a life settlement origination fee and reimbursement for the premium it paid in December 2008 during the policy transfer process (D.E. 246 at 11).

In January 2009, upon request, Pruco confirmed Wells Fargo as the Policy's sole owner and beneficiary (D.E. 187-23).  It began sending premium invoices and other Policy materials to Wells Fargo (D.E. 187-24).

### 3.    <u>Standard of Review</u>

This Court reviews on order granting summary judgment *de novo*, applying the same substantive law as the district court.  *Durr v. Shinseki*, 638 F.3d 1342, 1346 (11th Cir. 2011); Fed. R. Civ. P. 56(a).

## <u>SUMMARY OF THE ARGUMENT</u>

The Court should set aside the second amended final judgment and reverse the summary-judgment order for two reasons.  First, section 627.455, Florida Statutes, grants the issuer of a life insurance policy two years from the date a policy issues to challenge its validity.  As this Court held in *Allstate Life Insurance Company v. Miller*, 424 F.3d 1113, 1115-17 (11th Cir. 2005), incontestability clauses act like statutes of limitations.  After a policy has been in force during the lifetime of the insured for two years from its inception, it becomes incontestable. Here, Pruco challenged the Policy *more than four years* after it issued the Policy. Yet the district court did not apply *Miller* or enforce the statute of limitations built into section 627.455, concluding that *Miller* did not apply to a claim that a policy was void *ab initio*.  But in *Miller* itself, the insurer sought to have a life insurance policy declared void *ab initio*.  *Miller* is absolutely on point and applies here.

Second, in concluding that the Policy is void for lack of an insurable interest, the trial court applied the wrong standard under the Florida insurable-interest statute, section 627.404.  Under that statute, an insurable interest exists as long as the person or entity designated as the beneficiary has an insurable interest in the insured at the policy's inception.  That certainly was the case here, where the Policy on Mrs. Berger's life named her husband as sole beneficiary.  The district court, however, erroneously engrafted on to the statute what it described as a good-faith requirement—that the person obtaining the policy may not intend ever to transfer the policy.  The statutes say nothing about intent.  In fact, section 627.404(1), Florida Statutes, states that an insurable interest *need not exist* after a life insurance policy's inception; and section 627.422, Florida Statutes, provides that a life insurance policy may be freely assigned and its beneficiary changed as long as the policy permits.  Finally, even if what the district court described as good faith were required, a disputed issue of fact remained about Mrs. Berger's intent when the Policy was procured.  Therefore, even under the district court's good-faith test, summary judgment was inappropriate.

## ARGUMENT

**I.    FLORIDA LAW AND THE POLICY PROHIBIT PRUCO FROM ASSERTING THE POLICY'S INVALIDITY BECAUSE THE TWO-YEAR INCONTESTABILITY PERIOD HAD LONG-SINCE EXPIRED**

Florida law bars Pruco's claim.  Section 627.455, Florida Statutes (2010), requires that "[e]very insurance contract shall provide that the policy *shall be incontestable* after it has been in force during the lifetime of the insured for a period of 2 years from its date of issue" (emphasis added).  As the statute requires, the Policy contains an incontestability clause:

> Except as we state in the next sentence, we will not contest this contract after it has been in force during the Insured's lifetime for two years from the issue date.  The exceptions are: (1) non-payment of enough premium to pay the required charges; and (2) any change in the contract that requires our approval and that would increase our liability.  For any such change, we will not contest the change after it has been in effect for two years during the lifetime of the Insured.

(D.E. 1-6 at 14).

As this Court has held, the clause prohibits an insurance company from challenging a life insurance policy after the two-year period.  *Allstate Life Ins. Co. v. Miller*, 424 F.3d 1113, 1115-17 (11th Cir. 2005).  The only exceptions are for non-payment of premiums and provisions related to disability benefits and additional insurance in the event of "accidental" death, at the option of the insurer. § 627.455, Fla. Stat. (2010); *see Miller*, 424 F.3d at 1115.  As the district court

noted, neither applies here (D.E. 64 at 10). The statute contains no exception for policies issued based on fraud in an application or alleged to be void *ab initio*.

This Court has rejected efforts to read into the statute an exception for policies obtained through fraud or alleged to be void *ab initio*. *Id.* at 1116-17. In *Miller*, the insurer challenged a life insurance policy after the incontestability period, seeking to declare the policy void *ab initio* because an impostor allegedly appeared at the required medical examination. *Id.* at 1114. This Court held that, while an insurer may assert a number of grounds "to rescind or void an insurance policy before the incontestability clause goes into effect, § 627.455 prevents an insurer from doing so once the policy has been in effect for two years during the life of the insured, except on the three grounds enumerated in the statute." *Id.* at 1116. This Court expressly rejected the notion that section 627.455 would not apply in a suit "based upon a claim that the policy is void *ab initio*." *Id.* Instead, like the Florida Supreme Court, it recognized that "incontestability clauses, such as the one contained in § 627.455, are 'in the nature of, and serve[ ] a similar purpose as, a statute of limitations.'" *Id.* at 1115 (quoting *Prudential Ins. Co. of Am. v. Prescott*, 176 So. 875, 878 (Fla. 1937)). "As such," the Court continued, "while incontestability clauses 'recognize[ ] fraud *and all other defenses*, [they] provide[ ] a reasonable time in which they may be, but beyond which they cannot be, established." *Id.* (emphasis added).

The district court here refused to apply *Miller* (D.E. 64 at 12 n.5). While recognizing "the public policy that prohibits an insurance company from contesting the policy after the contestability period expires" and measuring it against "the public policy that an insurable interest is necessary for an insurance policy to be valid in the first place," the district court incorrectly concluded that no binding precedent existed "to reconcile one policy over the other" (D.E. 64 at 11-12). But unlike the cases on which the district court relied, *Miller is* binding precedent and squarely applies here.[2]

Attempting to distinguish *Miller*, the district court held that "[a] claim for lack of insurable interest . . . is different from a standard fraud or imposter-based claim in that a successful lack of insurable interest claim renders the insurance policy void *ab initio* rather than voidable" (D.E. 64 at 12 n.5). The court overlooked that, in *Miller*, too, the insurer argued that the policy was void *ab initio*. 424 F.3d at 1116. Like Pruco (D.E. 39 at 4-9), that insurer "argue[d] that it [was] not contesting the policy in a manner prohibited by § 627.455 because its suit [was] based upon a claim that the policy [was] void *ab initio*" and there was "no actual contract." *Id.* This Court rejected such a distinction and held that the

---

[2] The district court relied on another district-court case concluding that *Miller* did not apply to actions seeking to declare a life insurance policy void *ab initio* (D.E. 64 at 12). That case, *John Hancock Life Insurance Company v. Rubenstein*, No.09-21741-CIV-UNGARO (S.D. Fla. Aug. 31, 2009), was decided at the motion-to-dismiss stage, was not published, is not binding on this Court and, for the reasons discussed in the text, was wrongly decided.

incontestability clause nonetheless barred the action.  *See id.*  It noted that "Florida courts have already rejected claims by an insurer who sought to rescind an insurance policy because it would not have agreed to issue the policy had it known the true facts of the insured's medical history."  *Id.*  Similarly, here Pruco claims that, had it known the truth about Mrs. Berger's net worth or that the Policy was a STOLI policy, it would not have issued the Policy (D.E. 1 at 3).  *Miller* cannot be distinguished.

Even if the Court accepts the district court's view that *Miller* applies only in fraud and impostor cases, the result is the same because Pruco's claim is essentially for fraud.  Although Pruco cloaks its claim in lack-of-insurable-interest language, its allegations confirm that, at its core, its challenge is based on fraud.  The complaint is rife with fraud allegations (D.E. 1 at 2 ("The Berger Policy . . . was the product of fraud."), 3 ("Ms. Berger's income, assets and net worth were fraudulently inflated"), 9 (listing "false" "material representations" made to Pruco about Mrs. Berger's net worth), 11 ("[Pruco] did, in fact, reasonably rely upon the fraudulent misrepresentations in the Financial Statement when determining that Ms. Berger qualified for a $10 million policy.")).  Pruco's summary-judgment motion and statement of undisputed facts also were littered with fraud allegations (D.E. 177 at 8-19, 178 at 3-15, 18-19).

As *Miller* warned, "the Florida appellate courts have uniformly and expressly held that the § 627.455 incontestability clause bars an insurer from rescinding or contesting the policy based on alleged fraudulent misrepresentations the insured made in the policy application. We can discern no indication that the Florida Supreme Court would disagree." *Id.* at 1117.

Even if *Miller* were not binding, its reasoning would be compelling. A categorical bar to suits brought after the incontestability period discourages insurers from ignoring indications of fraud—in particular with high-value policies like the one here—while collecting large premium payments without fear of ever having to pay out on the policy. It also brings certainty to Florida insurers and policyholders. Such restrictions are even more important when an innocent third-party purchases the policy following statements by the insurer that premiums were paid and the policy is in force. While acknowledging this concern, the district court concluded that it was outweighed by the fear that "if bad actors can disguise their fraud for two years, their hands are washed clean . . . and they are free to collect on their ill-gotten gains" (D.E. 64 at 13) (quoting *Settlement Funding, LLC v. AXA Equitable Life Ins. Co.*, No. 06 CV 5743(HB), 2010 WL 3825735, at *5 (S.D.N.Y. Sept. 30, 2010), decided under New York law). This conclusion ignores *Miller*'s holding that incontestability clauses, like the one in section 627.455, serve as statutes of limitations. It also ignores *Miller's* implicit recognition that the

statute emphasizes the necessary vigilance of insurers—who have the resources to unearth fraud during the two-year incontestability period—over the possibility of future litigation about allegedly fraudulent policies: "The incontestability clause thus works to the mutual advantage of the insurer and the insured, 'giv[ing] the insured a guaranty against expensive litigation to defeat his policy after the lapse of the time specified, and at the same time giv[ing] the company a reasonable time and opportunity to ascertain whether the [insurance] contract should remain in force.'" *Miller*, 424 F.3d at 1115.

*Miller* relied on uniform Florida case law holding that an incontestability clause bars an insurer's attempt to rescind or declare void insurance contracts after two years. *See Great So. Life Ins. Co. v. Porcaro*, 869 So. 2d 585, 587 (Fla. Dist. Ct. App. 2004) (barring an insurer from challenging a reinstatement of insurance after the incontestability period); *Kaufman v. Mut. of Omaha Ins. Co.*, 681 So. 2d 747, 750 (Fla. Dist. Ct. App. 1996) ("No action was taken by the insurer . . . until after the two-year time period had run. Consequently, the insurance policy had become incontestable and the insurer was not allowed to rescind it on the basis of alleged misstatements in the insurance application."); *Prudential Ins. Co. of Am. v. Rhodriquez*, 285 So. 2d 689, 690 (Fla. Dist. Ct. App. 1973) (barring a claim brought after the incontestability period to rescind an insurance contract on the basis of fraudulent misrepresentations during the application process); *Bankers*

*Sec. Life Ins. Soc. v. Kane*, 885 F.2d 820, 822 (11th Cir. 1989) (barring a declaratory action, brought after the incontestability period and seeking to void a life insurance policy on the basis of fraudulent misrepresentations, and refusing to "create exceptions to Florida law or void insurance policies *ab initio* in a manner that would undermine the intent of the Florida legislature and the practice in the Florida courts."). If an insurer uncovers fraudulent misrepresentations made during the application process, it may file a claim for rescission within the period allowed by the incontestability clause. *See*, *e.g.*, *American Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1336 (11th Cir. 2009).

Under both *Miller* and Florida cases interpreting section 627.455, because the two-year incontestability period has expired, Pruco cannot seek to declare the Policy void. The district court should have granted summary judgment in Wells Fargo's favor. This Court should reverse.

## II. UNDER FLORIDA'S INSURABLE-INTEREST STATUTE, THE POLICY DID NOT LACK AN INSURABLE INTEREST AT ITS INCEPTION

Only Count I of Pruco's complaint was directed against Wells Fargo (D.E. 1 at 14). In that count, the sole basis for invalidating the Policy was that it was void because it lacked an insurable interest at inception (D.E. 1 at 14). And that was the sole argument in Pruco's summary-judgment motion for voiding the Policy (D.E. 177 at 4-6). Therefore, the only relevant issue in deciding whether summary

judgment was appropriate (besides incontestability, discussed above) is whether an insurable interest existed at the Policy's inception.[3]

Florida courts have long held that an insurable interest is necessary to a life insurance policy's validity.  If an insurable interest is lacking, the policy is considered a wagering contract and void *ab initio* as against public policy.  But in determining whether an insurable interest existed, the district court applied the wrong standard and then, using that standard, erroneously concluded that no insurable interest existed.

As we explain below, (A) under Florida law, the only issue is whether an insurable interest existed *at the policy's inception*, and, because one existed here, summary judgment was appropriate in Wells Fargo's favor; and (B) if this Court applies a subjective intent requirement in addition to the statute, genuine issues of material fact remain precluding summary judgment.

### A.    Mrs. Berger Had an Insurable Interest at the Policy's Inception, Which Is All that the Statute Requires

In 2008, the Florida Legislature passed Chapter 2008-36, § 1, codified at section 627.404, Florida Statutes, to clarify existing Florida common law relating

---

[3] Perhaps concerned that *Miller* precluded it from asserting fraudulent procurement, Pruco framed its claim, which, at its core, is a fraud claim, in terms of insurable interest at inception.  But its summary-judgment motion nevertheless injected facts that would be relevant only to whether the Policy was obtained by fraud, such as misrepresentations about the Bergers' net worth (D.E. 177 at 8-19, 178 at 3-15, 18-19), providing another reason to apply *Miller*.

to insurable interests (D.E. 186-2 at 5).  Before then, courts had consistently interpreted Florida law as prohibiting the issuance of a life insurance policy to someone without an insurable interest in the insured, but "the statutory and case law provide[d] very little guidance on determining whether an insurable interest exists."  Fla. S.B. 648 Analysis (D.E. 186-2 at 2).  The 2008 statute clarified the framework necessary to determine whether an insurable interest exists.  Subsection (1) of the statute provides:

> Any individual of legal capacity may procure or effect an insurance contract on his or her own life or body for the benefit of any person, but no person shall procure or cause to be procured or effected an insurance contract on the life or body of another individual unless the benefits under such contract are payable to the individual insured or his or her personal representatives, or to any person having, at the time such contract was made, an insurable interest in the individual insured.  *The insurable interest need not exist after the inception date of coverage under the contract.*

§ 627.404(1), Fla. Stat. (2008) (emphasis added).  Under section 627.404, "[a]ny individual of legal capacity may procure or effect an insurance contract on his or her own life or body *for the benefit of any person* . . . ." (emphasis added).  Such a policy always includes an insurable interest, because "[a]n individual has an insurable interest in his or *her own life*, body and health."  § 627.404(2)(b)(1), Fla. Stat. (2008) (emphasis added).  Even a person with no insurable interest in another person may purchase a policy on the life of the other as long as "the benefits under such contract are payable to the individual insured . . . or to any person having, *at*

*the time the contract was made*, an insurable interest in the individual insured." § 627.404(1), Fla. Stat. (2008) (emphasis added).  An individual "has an insurable interest in the life, body, and health of another person to whom the individual is closely related by blood or by law and in whom the individual has a substantial interest engendered by love and affection." § 627.404(2)(b)(2), Fla. Stat. (2008).

Here, the undisputed facts demonstrate an insurable interest at the Policy's inception.  The initial Policy owner, Mrs. Berger, had an insurable interest in her own life, as did her husband, the Policy's original sole beneficiary.  And although not necessary to the analysis, an insurable interest remained when the Policy was transferred to the Berger Trust because Mrs. Berger was the Trust's settlor and her husband was its sole beneficial owner.  Clearly, Mrs. Berger's husband, the named beneficiary of the Policy at the time the contract was made—who had "a substantial interest" in Mrs. Berger "engendered by love and affection"—had an insurable interest in his wife and would have received Policy proceeds (subject to the LaSalle loan) had Mrs. Berger passed away between the date Pruco issued the Policy and two-and-a-half years later, when Mrs. Berger directed the trustee to relinquish it to LaSalle to satisfy the bank's loan.

Florida's statutory scheme also permitted Mrs. Berger to transfer the Policy. Section 627.404(1), Florida Statutes, provides that "an insurable interest *need not exist* after the inception date of coverage under the contract" (emphasis added).

Therefore, the only relevant insurable interest is the one existing at the inception of coverage. The district court overlooked this language.

The district court also failed to consider that Florida law permits the transfer of life insurance policies:

> [A]ny life or health insurance policy under the terms of which the beneficiary may be changed upon the sole request of the policyowner, may be assigned either by pledge or transfer of title, by an assignment executed by the policy owner alone and delivered to the insurer, whether or not the pledgee or assignee is the insurer.

§ 627.422, Fla. Stat. (2008).

Instead of applying the statute's plain language, the district court engrafted an additional element: that when the policy is procured, there must be no intent that it will ever be transferred or assigned (D.E. 64 at 7-9, 246 at 14-20).[4] The statutes' plain language flatly precludes such a subjective, good-faith requirement. Neither section 627.404 nor section 627.422 ever mentions intent. Indeed, a subjective, good-faith intent standard would require courts to examine the policy owner's mental state at the time of procurement, which would unnecessarily complicate litigation and, more importantly, be unfair to policy beneficiaries. The standard also would become more and more unworkable with the passage of time.

---

[4] *Sciaretta v. Lincoln National Life Insurance Company*, 899 F. Supp. 2d 1318, 1324-26 (S.D. Fla. 2012), relied on the district court's decision here to reach the same result. *Sciaretta* also noted that the contestability period is not an issue when a policy is void *ab initio* because of lack of an insurable interest. *Id.* at 1328. Like this case, *Sciaretta* was wrongly decided.

Intent is irrelevant.  *See Lincoln Nat'l Life Ins. Co. v. Gordon R.A. Fishman Irrevocable Life Trust*, 638 F. Supp. 2d 1170, 1178-79 (C.D. Cal. 2009); *see also Kramer v. Phoenix Life Ins. Co.*, 940 N.E.2d 535, 537 (N.Y. 2010) ("New York law permits a person to procure an insurance policy on his or her own life and immediately transfer it to one without an insurable interest in that life, even where the policy was obtained for just such a purpose.").  In *Lincoln*, the initial policy owner, having learned of a program through which he could receive "free" life insurance, procured several policies designating his four sons as beneficiaries. *Lincoln*, 638 F. Supp. at 1174.  The policies were later transferred to a third-party. *Id.*  The insurer sought to declare the policies void *ab initio* because they always had been intended to be transferred.  *Id.* at 1178.  Yet the district court concluded that the policy met the requirements of California's insurable-interest statute, which at the time was similar to Florida's.  *Id.*  The court noted that "for two years this not only had the formal appearance of a legitimate life insurance policy on Dr. Fishman's life for the benefit of someone with an insurable interest in the same, but [this] was in fact true."  *Id.* at 1179.  *Lincoln* recognized that, when insurable-interest statutes do not consider the state of mind of the individual or entity procuring a life insurance policy, courts should not do so.  *Id.* at 1178.  A court may not "basically look behind the terms and formalities of an insurance agreement(s) and basically re-write it to reflect what was really going on between

the various parties thereto insofar as determining the existence (or lack thereof) of an insurable interest to an insurance policy." *Id.* at 1178-79.

## B. Under a Subjective Standard, Genuine Issues of Material Fact Remain About Mrs. Berger's Intent at the Policy's Inception

The governing Florida statutes dictate application of a simple, objective test: whether an insurable interest existed at the policy's inception. The district court, however, engrafted onto the statute a subjective good-faith requirement (D.E. 64 at 7-9, 246 at 14-20). Even if this Court agrees that the intent of the individual - procuring a life insurance policy is relevant, summary judgment for Pruco was nevertheless inappropriate. In reviewing a motion for summary judgment, a district court must construe the evidence in the light most favorable to the nonmoving party, and grant the motion only if it determines that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. *William Penn Life Ins. Co. of New York v. Sands*, 912 F.2d 1359, 1361 (11th Cir. 1990). Intent is often an issue of fact. *See*, *e.g.*, *Equity Inv. Partners, LP v. Lenz*, 594 F.3d 1338, 1345 (11th Cir. 2010) (holding that summary judgment was improper where issues existed regarding whether the mortgage was intended to secure repayment of prior loans); *In re Bankest Capital Corp.*, 374 B.R. 333, 346-47 (S.D. Fla. 2007) (denying summary judgment because issues of fact remained as to whether the debtor made payment with actual intent to hinder, delay or defraud creditors); *State Farm Mut. Auto. Ins. Co. v. Weiss*, 410 F. Supp.

2d 1146, 1159 (M.D. Fla. 2006) (citing *Cohen v. Kravit Estate Buyers, Inc.*, 843 So. 2d 989, 991 (Fla. Dist. Ct. App. 2003) (reversing summary judgment where genuine issues of fact existed about whether a joint venture intended to defraud)). The evidence about Mrs. Berger's intent at the time the Policy issued is disputed.

For example, contrary to the district court's statement that "[t]he Bergers' testimony . . . shows that they intended for the policy to be assigned or otherwise transferred to a person or entity with no insurable interest" (D.E. 246 at 17), Mrs. Berger testified that, while she recognized that the Policy *might* be assigned after a period of time, her intent was that the benefits would go to her family (D.E. 201-2 at 5). She told her children, "if I should die, I said you'll get some money" (D.E. 201-2 at 5). The transfer of the Policy was possible, but not certain, and her testimony does not indicate that the Policy was procured with the intent of having a third-party stand in as owner or beneficiary. Rather, she testified that "I just felt for the first three years, if I should die my kids would inherit or my husband would inherit . . . if I should die in that three years, then my family would get the money" (D.E. 201-2 at 8). Therefore, genuine issues of material fact remain about her intent at inception.

# <u>CONCLUSION</u>

For the reasons stated, this Court should reverse the judgment and remand with instructions to enter judgment in Wells Fargo's favor or, in the alternative, for a trial on the merits.

Dated: July 10, 2013                    Respectfully submitted,


                                        WHITE & CASE LLP

SHUBIN & BASS, P.A.                       /s/Raoul G. Cantero
John K. Shubin                          Raoul G. Cantero
Florida Bar No. 771899                  Florida Bar No. 552356
jshubin@shubinbass.com                  rcantero@whitecase.com
Juan J. Farach                          Maria J. Beguiristain
Florida Bar No. 957704                  Florida Bar No. 69851
jfarach@shubinbass.com                  mbeguiristain@whitecase.com
46 S.W. 1st Street                      200 South Biscayne Boulevard
Third Floor                             Suite 4900
Miami, Florida 33130                    Miami, FL 33131
Telephone:  (305) 381-6060              Telephone: (305) 371-2700
Facsimile:   (305) 381-9457             Facsimile: (305) 358-5744

*Co-Counsel for Defendant-Appellant*
*Wells Fargo Bank, N.A., as Securities Intermediary*


## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,438 words, excluding parts exempted by Rule 32(a)(7)(B)(iii).  It also complies with the typeface and style requirements of Rules 32(a)(5) and (6) because it was typed in proportionally spaced typeface using Microsoft Word, 14-point Times New Roman type.

         /s/Raoul G. Cantero
         Raoul G. Cantero

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on July 10, 2013, I electronically filed this initial brief with the Clerk of the Court. I also certify that the initial brief is being served this day on all counsel of record, either via transmission of notices of electronic filing generated by the Court or in some other authorized manner for those counsel or parties who are not authorized to receive notices of electronic filing.

Stephan A. Serfass
stephen.serfass@dbr.com
Nolan B. Tully
nolan.tully@dbr.com
Drinker Biddle & Reath LLP
One Logan Square
Suite 2000
Philadelphia, Pennsylvania 19103
Telephone: (215) 988-2700
Facsimile: (215) 988-2757
*Counsel for Pruco Life Insurance Company*

Wendy L. Furman
wfurman@pettfurman.com
Pett Furman, PL
2101 N.W. Corporate Boulevard
Suite 316
Boca Raton, Florida 33431
*Counsel for Pruco Life Insurance Company*

    /s/Raoul G. Cantero    
Raoul G. Cantero